## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELI HECKMAN** | : | |
| **2214 W. Tilghman Street** | : | **CIVIL ACTION** |
| **Allentown, Pennsylvania 18104,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **No.** |
| **vs.** | : | |
| | : | |
| **PATROLMAN JASON A. AMMARY** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Allentown Police Department* | : | |
| **425 Hamilton Street** | : | |
| **Allentown, Pennsylvania 18101,** | : | **Civil Right § 1983** |
| | : | |
| **JOHN/JANE DOES #1 - X** | : | |
| *Individually and in their official capacity as* | : | |
| *members of the Allentown Police Department* | : | **FILED** |
| **425 Hamilton Street** | : | |
| **Allentown, Pennsylvania 18101,** | : | JUL 29 2015 |
| | : | MICHAEL E. KUNZ, Clerk |
| **and** | : | By_____Dep. Clerk |
| | : | |
| **CITY OF ALLENTOWN** | : | |
| **435 Hamilton Street** | : | **Jury Trial Demanded** |
| **Allentown, Pennsylvania 18101,** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

**NOW COMES**, the Plaintiff **ELI HECKMAN**, by and through his legal

counsel, Joshua E. Karoly, Esquire, and with him Karoly Law Firm, LLC, and does

hereby allege and aver the following:

## I. JURISDICTION AND VENUE

1.  This action is instituted under the United States Constitution, particularly under the provisions of the First, Fourth and Fourteenth Amendments, and under federal law, particularly the Civil Rights Act of 1871 hereinafter referred to as the "Act," or "§ 1983", as amended, 42 U.S.C. § 1983.

2.  This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, § 1343(a)(3), § 1343(a)(4) and § 1367(a), regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3.  Venue in the Eastern District is properly laid pursuant to 28 U.S.C. § 1391, insofar as the alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the Plaintiff's claims, arose within the geographical limits of this District in general, and within the geographical limits of the City of Allentown, Pennsylvania, in particular.

## II. PARTIES

4.  Plaintiff Eli Heckman (hereinafter "Heckman" or "Plaintiff") is an adult individual, currently residing at 2214 Tilghman Street, Allentown, Lehigh County, Pennsylvania, 18104.

5.  Defendant, Patrolman Jason A. Ammary (hereinafter referred to as "Ammary" or "Defendant") is an adult individual who, at all times relevant hereto, was serving in his capacity as a sworn officer of the Allentown Police Department, and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the Ordinances of the City of Allentown. Defendant Ammary was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of law, and acted in concert with one or more individuals in the performance or conduct of their actions, or acted independently of them. He is sued in his individual and official capacities.

6.  Defendant John/Jane Does #1 - X (hereinafter referred to as "Does") is/are adult individual(s) who, at all times relevant hereto, was/were serving in their capacity as sworn officer(s) of the Allentown Police Department, and was/were entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the City of Allentown. Defendant Does was/were entrusted to protect the Constitutional rights of those they encountered and at all times relevant hereto, was/were acting under the authority and color of law, and acted in concert with one or more of the other individual Defendants in the performance of their actions, or acted independently.

3

7.    Defendant City of Allentown (hereinafter referred to as the "City") is a municipal corporation, city of the third class, and governmental entity within the Commonwealth of Pennsylvania, empowered to establish, regulate, and control its police department for the enforcement of laws and ordinances within its jurisdiction, and for the purpose of protecting and preserving the persons, property and the Constitutional rights of individuals within the geographical and legal jurisdiction of the Defendant City.

## III. PRE-DISCOVERY FACTUAL ALLEGATIONS

8.    On or about Monday, October 27, 2014, at approximately 8:21 p.m., Plaintiff was in the vicinity of 502 North Fourth Street, in the City of Allentown, Lehigh County, Pennsylvania.

9.    Plaintiff was on the public sidewalk, which he was lawfully entitled to traverse, when his attention was drawn to what appeared to be Allentown police officers assaulting an individual who was located on the porch of a home at that location.

10.   Because of the apparent excessive and unnecessary nature of the police assault on this person, and the blood curdling screams coming from the porch, Plaintiff began to film the conduct with his cell phone. (Several other citizens were also in the area and believed to be filming the incident).

4

11. Plaintiff had not only the right to film the Allentown police officers' actions as public servants, but given what he perceived to be violations of the officers' duties to protect and serve citizens, rather than to harm them, he believed that it was his moral obligation to attempt to memorialize the event so that he could disseminate it to the Courts, the Press and any other person who may be in a position of authority to investigate, punish and deter such police misconduct in the future.

12. The Plaintiff was not a participant in the events leading up to the police assault upon the unknown individual, which he was filming.

13. At no time did the Plaintiff's use of his cell phone to film the incident interfere with or obstruct, in any manner, the actions of any police officer, nor most especially did he interfere with the events he was recording.

14. Plaintiff was located off of the porch and on the public sidewalk when multiple officers were circled around the individual on the porch and he was being tased, while he was face down screaming in pain and begging for the officers to stop. (The other onlookers were also pleading with the officers to stop harming the man on the porch).

15. While filming, the Plaintiff was approached by an Allentown police officer. Though unknown to him at that time, the officer was later identified as Allentown Patrolman Jason A. Ammary, Defendant herein.

5

16. Defendant Ammary directed the Plaintiff to stop filming the event and to leave.

17. It was readily apparent to the Plaintiff that Defendant Ammary told the Plaintiff to stop filming because he did not want the Plaintiff to be able to memorialize the police actions upon the unknown male, and for no other reason.

18. The Plaintiff responded by stating, "there is no reason why I can't watch (film) this." In point of fact, the Plaintiff was on the public sidewalk where he had a right to be and he believed that he was within his rights as an American citizen to film matters that were plainly visible in public places, especially when doing so serves the public purpose of capturing misconduct of police officers.

19. When Defendant Ammary approached the Plaintiff and told him to stop filming, the Plaintiff put his phone down by his side, and began to walk away from the scene as directed.

20. Defendant Ammary stated, "get off the block," to which the Plaintiff stated, "I'm walking, I'm walking," multiple times.

21. At the same time, the Plaintiff advised Defendant Ammary that he "live[d] over there," gesturing with his hand, and continuing to walk in that direction.

6

22.   While the Plaintiff continued to walk away, as directed, Defendant Ammary responded by grabbing and shoving Plaintiff in an extremely rough manner, twisting his arms painfully behind his back, throwing him into a nearby car, taking his cell phone, and handcuffing him while his arms were painfully "chicken-winged" behind his back.

23.   During this process, the Plaintiff screamed in pain, "Stop! What are you doing?"; and, "I was walking." Defendant Ammary called the Plaintiff an "asshole" and screamed, "give me your fucking hands."

24.   After Defendant Ammary called the Plaintiff an asshole, Ammary realized the cell phone was still recording, and stopped it.

25.   After stopping the recording, Defendant Ammary smashed the phone into the ground in an attempt to break the phone and destroy the evidence of the actions by the officers with the man on the porch, as well as the unlawful assault, arrest and treatment of the Plaintiff by Ammary.

26.   The Plaintiff continued to tell Defendant Ammary that he was hurting the Plaintiff and again, asked Ammary why he was doing this to him. Defendant Ammary mumbled something about Plaintiff being an "asshole" for "videoing" and roughly pulled and shoved the Plaintiff into an Allentown police car parked nearby.

27. It is believed and therefore averred that other members of the Allentown Police Department were present and witnessed the abuse of the Plaintiff at the hands of Defendant Ammary.

28. Those other members had the opportunity and obligation as sworn members of the Allentown Police Department to intervene on behalf of the Plaintiff and stop the Constitutional violations being committed by Defendant Ammary against the Plaintiff.

29. Those other members are unknown to the Plaintiff at this time and are described in this Complaint as Defendants John/Jane Does 1-X, "Does."

30. Defendant Ammary transported the Plaintiff to the Allentown Police Department and placed him in a jail cell.

31. In the process of transporting the Plaintiff, Ammary said to the Plaintiff, "why did you have to videotape? Now you're fucked."

32. The Plaintiff remained in the jail cell for some time without any criminal charges being filed against him and without his being taken before a District Magistrate Judge.

33. The Plaintiff was then released and Defendant Ammary swore out a false Police Criminal Complaint against the Plaintiff charging him with the fabricated crimes of "Failure of Disorderly Persons to Disperse Upon Official Order," an alleged violation of Section 5502 of the Pennsylvania

8

Crimes Code, and "Disorderly Conduct," a misdemeanor of the third degree under section 5503(a)(4) of the Pennsylvania Crimes Code.

34.   The Plaintiff was thereafter required to hire an attorney to represent him, incurring significant loss of time and expense; and he suffered public humiliation and psychological and emotional distress. He was also required to make a subsequent Court appearance on December 30, 2014 at 1:15 p.m. before The Honorable Patricia M. Engler.

35.   The Plaintiff (and his retained attorney) appeared at the required time on December 30, 2014 to defend himself at the scheduled preliminary hearing on the false criminal charges filed against him by Defendant Ammary.

36.   The Plaintiff and his attorney waited a lengthy period of time for Defendant Ammary to appear and present his false allegations against the Plaintiff, but Defendant Ammary failed to appear and the criminal charges against the Plaintiff were dismissed by the presiding Magisterial District Judge.

37.   The Plaintiff is currently beginning the process of having his criminal record expunged of the false criminal surcharges filed by Defendant Ammary, involving a matter of additional public embarrassment, attorney's fees, time and expense.

38.   Defendant Ammary is believed to have a history of violence and Constitutional violations that were known, or through the exercise of

reasonable diligence, should have been known, to his supervisors, policy-makers, and Defendant City. This history has gone undisciplined and, in essence, the Defendant's past actions were condoned and encouraged by his supervisors and the City, leading directly to the Constitutional violations complained of in this action.

39. Prior to the filing of the instant Complaint, the Plaintiff, through counsel, formally complained about this incident to the Defendant City through their Chief of Police.

40. Plaintiff's counsel authored a lengthy letter detailing the mistreatment suffered by the Plaintiff and the Constitutional violations committed by Defendant Ammary, and even attached the irrefutable video proof of the incident.

41. The Plaintiff took these steps to notify the City of Allentown and its police department of the deplorable acts of its members.

42. Rather than the City and department being appreciative of being provided the information and taking appropriate disciplinary action to better their police force, the department verbally advised that they did an "investigation" and decided the complaint was "unfounded."

43. It is believed and therefore averred that no appropriate investigation was undertaken and no discipline was issued by the Defendant's supervisors

regarding the clear Constitutional violations committed by the Defendant against the Plaintiff.

44. This lack of appropriate investigation and discipline further evidences that violations of citizens' Constitutional rights were condoned and encouraged by supervisors and decision-makers of the City of Allentown, and that such acquiescence had became a custom or de facto policy within the City's Police Department.

45. The Allentown Police Department and City of Allentown provided inadequate policies and directives as well as inadequate training to the Defendants pertaining to the appropriate use of force to employ in given circumstances, like that which the Defendants encountered that night; and, no appropriate remedial training for these Defendants.

46. Upon information and belief, numerous officers of the Allentown Police Department routinely used excessive force in the performance of their duties, and no disciplinary action was taken regarding most of those instances.

47. Upon information and belief, prior to the incident giving rise to Plaintiff's Complaint, the written polices that existed regarding the appropriate use of force to be utilized in circumstances akin to those encountered here and commonly encountered by law enforcement, were

routinely ignored, and this was accepted as the common practice and custom within the Department.

48.   Despite repeated incidents/complaints of excessive use of force by Allentown Police Officers, no significant efforts were made to establish or ensure proper use of force standards within the Police Department. No efforts were made to ensure citizens' Constitutional rights were not violated.

49.   The aforesaid acts and omissions of the Defendants, evidence a deliberate indifference to the rights guaranteed to individuals, such as the Plaintiff, under the First, Fourth and Fourteenth Amendments to the United States Constitution.

50.   At all times relevant hereto, the legal principles regarding the rights of persons, such as Plaintiff, and the contours of those Constitutional and statutory rights, were well-established, and it was not reasonable for the Defendants to believe that their actions would not deprive the Plaintiff of those rights.

51.   The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of Plaintiff as more clearly set forth in the Counts below.

52.   The Plaintiff did not physically resist, threaten or assault the Defendants
      in any way, and the force used against him by Defendant Ammary was
      totally and completely unnecessary, unreasonable, excessive and
      outrageous.

53.   At no time during the events described above was the Plaintiff a threat to
      the safety of himself or others. To the contrary, he was simply attempting
      to leave the area, as directed when he was assaulted by Defendant
      Ammary.

54.   Upon information and belief, the Defendant City of Allentown, acting
      through its policy and decision-makers, has a long history of ignoring
      citizens' complaints and officers' violations of citizens' Constitutional
      rights. In effect, it was communicated to the Department, and to the
      public, that any attempt to reform the Department would be ineffectual
      and that the custom and practice of inflicting Constitutional abuses upon
      the public by members of the Allentown Police Department would
      remain intact.

55.   The City's history of turning a blind eye to Constitutional violations
      committed by members of its police department is further evidenced by
      the fact that despite being provided with clear evidence of abuse in the
      instant matter, the City, through its police department, once again

13

acquiesced in the abuse and in fact supported the abuse by siding with the officer by making an "unfounded" finding.

56.    The City failed to adopt, and where adopted, failed to enforce, reasonable and necessary policies and procedures to end this culture of abuse and deliberate indifference to the rights and safety of others, which had become the long-standing hallmark of the Allentown Police Department. The Defendant City herein continued to encourage this custom and practice of deliberate indifference to the Constitutional rights of others by ignoring, and even rewarding, inappropriate actions; by failing to promulgate appropriate rules, regulations and policies; by failing to enforce existing rules and regulations; by failing to discipline; by inappropriate hiring, training supervision and promotions; and by reinforcing the old culture of deliberate indifference.

57.    As a direct and proximate result of the said acts or omissions of Defendant Ammary, Plaintiff Heckman suffered, inter alia, the following injuries and damages:

> i. physical and mental pain and suffering, in both the past and the predictable future, including damages for physical pain, discomfort, loss of use of bodily function, disfigurement, ill health, difficulty sleeping, physical injuries and emotional

injuries including stigma, humiliation, distress, fright and emotional trauma;

ii. compensatory damages for loss of liberty during wrongful seizure, false arrest, false imprisonment and confinement and malicious prosecution;

iii. medical and psychological expenses, past and future;

iv. loss of life's pleasures;

v. impairment of personal and professional reputation, earnings, earning capacity, and shortening of economic horizons;

vi. attorney's fees and costs related to the underlying criminal prosecution and subsequent efforts to expunge Plaintiff's record of wrongful charges;

vii. destruction of personal property;

viii. general damages for violation of Plaintiff's Constitutional rights under the First, Fourth and Fourteenth Amendments to the United States Constitution and the cognate provisions and guarantees of the Pennsylvania Constitution; and

ix. punitive damages (except as to the Defendant City and Defendants in their official capacity), which are justified factually and legally because the Defendants acted maliciously

and/or wantonly in violating the Plaintiff's Constitutionally (federal and state) protected rights, and intentionally, recklessly and willfully engaged in reprehensible and outrageous conduct not to be tolerated in a civilized society.

58.     Should he be successful in the instant suit, Plaintiff further seeks counsel fees and costs as authorized by statute.

59.     The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of Plaintiff and it was unreasonable for either Defendant to believe that they were not violating such rights as more clearly set forth in the Counts below.

60.     Plaintiff believes, and thus avers, that without the intervention of this Honorable Court, he as well as others may suffer damages from similar Constitutional violations in the future, requiring injunctive relief.

61.     The Defendant at all times pertinent to the claims asserted herein, acted under color of state law.

62.     While acting under color of state law, the Defendants deprived Plaintiff of various state and federal Constitutional rights.

## COUNT I
### 42 U.S.C. § 1983
### Unlawful Seizure / False Arrest
### *Against Defendant Ammary and City (Monell)*

63.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

64.     The conduct of Defendant Ammary constituted an unlawful seizure of the Plaintiff, within the meaning of the Fourth Amendment.

65.     Said seizure was made by warrantless arrest and was unreasonable and without probable cause in that the facts and circumstances available to the Defendant and would not warrant a prudent officer in believing that the Plaintiff had committed or was committing a crime, which would justify his arrest.

66.     Specifically, Defendant Ammary, without probable cause, provocation or justification of any kind, grabbed and shoved Plaintiff into a nearby vehicle and eventually violently handcuffed and arrested Plaintiff, and took him into physical custody.

67.     The Plaintiff was subjected to this unlawful seizure and arrest in violation of, inter alia, the Fourth Amendment of the United States Constitution.

68.     As a result of the unlawful seizure and false arrest affected upon the Plaintiff, the Plaintiff suffered damages as stated herein.

69. Defendant Officer Ammary is liable for his personal involvement in the commission of the acts complained of here.

70. Defendant, the City of Allentown, is liable for the acts of Defendant Officer Ammary pursuant to the claims of Municipal Liability (Monell), expressly set forth herein, and which are incorporated by reference as if set forth et extenso here.

71. Further, the conduct exhibited by Ammary, an employee of Defendant City, and a subordinate municipal officer on October 27, 2014, was not unexpected. Neither were they the deeds of an independent, non-supervisory actor. But, rather, they constituted predictable behavior of a subordinate who operated with perceived impunity due to the deliberate indifference of his supervisors, decision-makers and policymakers, and their joint policies, practices and customs, which operated as the moving force behind what the Officer believed to be his unaccountable efforts to engage in what had become, all to customary, Constitutional deprivations by members of the Allentown Police Department.

72. The likelihood is that, but for the alleged acts and omissions committed by the Defendant City of Allentown and its decision /

18

policy makers, the injuries inflicted by Defendant Ammary upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against both Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendant Ammary in his individual capacity and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT II
### 42 U.S.C. § 1983
### Excessive Force and Physical Brutality
### *Against Defendant Ammary and City (Monell)*

73. The preceding paragraphs are incorporated herein by reference as though fully set forth.

74. The Plaintiff was subjected to a seizure within the meaning of the Fourth Amendment through the application of force.

75. The application of any force against the Plaintiff was unreasonable under the circumstances and unconstitutionally excessive.

76. The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while being arrested, even if the arrest is otherwise proper; and, in this instance, because

there existed no probable cause for arrest, the use of force was excessive.

77. The Defendant used excessive force in the arrest of the Plaintiff in that there was absolutely no need for the application of any force, and the fact that the amount of force used by the Defendant exceeded the amount of force, which a reasonable officer would have used under similar circumstances, even assuming arguendo, that an arrest of Plaintiff was warranted.

78. No physical force of any kind was required nor should have been employed.

79. At the time of Defendant Ammary's unprovoked and unjustified assault upon him, the Plaintiff was simply attempting to leave the area.

80. The Plaintiff did not present any threat to the Defendant or any other person or property.

81. At the time of his arrest, the Defendant did not have probable cause to believe that Plaintiff had committed, or was committing any crime whatsoever.

82. The Plaintiff did not resist or attempt to evade arrest but succumbed peacefully to the will of the Defendant, despite the unlawfulness of the

Plaintiff's arrest and, despite the excessive force employed by the Defendant against him.

83.    The Plaintiff was not violent, dangerous or armed. The cell phone he held was not a weapon nor contraband, but his lawful personal property, lawfully possessed.

84.    The Plaintiff's arrest, despite its ferocity, was affected in a short period of time.

85.    Defendant Ammary used excessive force upon the Plaintiff by grabbing and shoving him in an extremely rough manner, by twisting his arms painfully behind Plaintiff's back, by then throwing Plaintiff into a nearby vehicle, and by then painfully, and to an extreme degree, wrenching Plaintiff's arms up behind his back ("chicken-wing style") while the Plaintiff screamed in pain for Defendant to stop.

86.    Defendant further used excessive force in applying handcuffs too tightly, causing numbness, tingling and damage to Plaintiff's hands, wrists and arms and by roughly pulling and shoving the Plaintiff into a police car.

87.    The use of force by the Defendant was not reasonable under the Constitution where, as here, there was no need for any force, especially the force that was used.

88. The nature and degree of excessiveness utilized against the Plaintiff by Defendant was outrageous, reprehensible, malicious, vicious, intentional, and malevolent, and clearly warrants an award of punitive and compensatory damages.

89. As a result of the excessive use of force employed against the Plaintiff in violation of his Fourth Amendment rights, the Plaintiff suffered damages as stated herein.

90. Defendant Ammary is liable for his personal involvement in the commission of the acts complained of here.

91. Defendant, the City of Allentown, is liable for the acts of Defendant Officer Ammary pursuant to the claims of Municipal Liability (Monell), expressly set forth herein, and which is incorporated by reference as if set forth et extenso herein.

92. Further, the conduct exhibited by the subordinate municipal officer, and in particular, employee Ammary, which occurred on October 27, 2014, was not unexpected. Neither were Ammary's deeds that of an independent, non-supervisory actor. But, rather, they constituted predictable behavior of a subordinate who operated with perceived impunity due to the deliberate indifference of his supervisors, decision makers, and policymakers, and their policies, practices and customs,

which operated as the moving force behind what Defendant Ammary believed to be his unaccountable effort to engage in what had become, all to customary, Constitutional deprivations by members of the Allentown Police Department.

93. The likelihood is that, but for the alleged acts and omissions committed by the Defendant City and its decision / policy makers, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against both Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendant Ammary in his individual capacity and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT III
## 42 U.S.C. § 1983
## False Imprisonment
### *Against Defendant Ammary and City (Monell)*

94. The preceding paragraphs are incorporated herein by reference as though fully set forth.

95.    The Defendant Ammary either individually, or acting in concert, subjected the Plaintiff to false imprisonment in violation of Plaintiff's Constitutionally protected Fourth Amendment rights.

96.    The Defendant deliberately arrested, and thereafter deliberately further detained, the Plaintiff in custody.

97.    Said detention was unlawful because it lacked probable cause.

98.    The facts and circumstances, which were within the knowledge of Defendant Ammary at the time of Plaintiff's arrest, were not sufficient to warrant a man of reasonable caution to believe that Plaintiff had committed or was committing a crime for which an arrest was authorized under the law.

99.    As a result of being subjected to False Imprisonment, in violation of his Constitutionally protected rights under the Fourth Amendment, Plaintiff suffered the damages alleged herein.

100.    Defendant Ammary is liable for his personal involvement in the commission of the acts complained of here.

101.    Defendant, the City of Allentown, is liable for the acts of Defendant Ammary pursuant to the claims of Municipal Liability (Monell), expressly set forth herein, and incorporated by reference as if set forth et extenso here.

102. Further, the conduct exhibited by the subordinate municipal officer, and in particular, employee Ammary, which occurred on October 27, 2014, was not unexpected. Neither were Ammary's deeds that of an independent, non-supervisory actor. But, rather, they constituted predictable behavior of a subordinate who operated with perceived impunity due to the deliberate indifference of his supervisors, decision makers, and policymakers, and their policies, practices and customs, which operated as the moving force behind what Defendant Ammary believed to be his unaccountable effort to engage in what had become, all to customary, Constitutional deprivations by members of the Allentown Police Department.

103. The likelihood is that, but for the alleged acts and omissions committed by the Defendant City of Allentown and its decision / policy makers, the injuries inflicted upon the Plaintiff would not have occurred.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against both Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendant

Ammary in his individual capacity and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT IV
## 42 U.S.C. § 1983
## Malicious Prosecution
### *Against Defendant Ammary and City (Monell)*

104. The preceding paragraphs are incorporated herein by reference as though fully set forth.

105. On October 27, 2014, Plaintiff was charged by Defendant Ammary via Criminal Complaint.

106. The Plaintiff was charged with "Failure of Disorderly Persons to Disperse Upon Official Order" (18 Pa. C.S.A. § 5502); and, Disorderly Conduct (18 Pa. C.S.A. § 5503(a)(4) – M3); by Defendant Ammary who swore out a knowingly false Probable Cause Affidavit and filed a knowingly false Criminal Complaint.

107. On December 30, 2014, a preliminary hearing was held before Magisterial District Judge Patricia M. Engler, where all charges against Plaintiff were dismissed based upon Defendant Ammary's failure to appear or to establish probable cause to believe that a crime was committed and that Plaintiff committed a crime.

108. Plaintiff was represented at the preliminary hearing by the undersigned and was forced to expend money for counsel fees and costs to defend the unjust and unfounded charges.

109. Defendant Ammary violated the Plaintiff's Fourth Amendment rights by wrongfully initiating the prosecution of Plaintiff for the above referenced crimes.

110. The aforesaid criminal prosecution was designed, procured, facilitated, promoted and initiated as a pretext, a defense and an unwarranted justification for the Defendant's unlawful and unconstitutional violation of the Plaintiff's federally protected rights under the First, Fourth and Fourteenth Amendments.

111. The Defendant lacked probable cause to initiate the said criminal proceeding against the Plaintiff, as was established by the Magistrate's dismissal of all charges for failure to prove even a prima facie case; and based upon the Defendant's failure to appear and to be subject to cross-examination, under oath, concerning the fabricated criminal charges he had maliciously filed.

112. The criminal proceeding in the case ended in Plaintiff's favor.

113. The Defendant acted maliciously, as stated, or for a purpose other than bringing the Plaintiff to justice.