IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELI HECKMAN, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| vs. | : | NO. 15-4184 |
| | : | |
| CITY OF ALLENTOWN, et al., | : | |
|     Defendants | : | |

## M E M O R A N D U M

**STENGEL, J.**  November 3, 2015

Plaintiff's attorney has filed a motion to recuse, arguing that this matter should be reassigned to another judge because I "found his father guilty of various offenses and sentenced him to seventy-eight months of incarceration." Counsel also argues that because his brother was a co-defendant of his father and will be assisting in the handling of the case, reassignment is necessary in order to avoid the appearance of impropriety, and in the interests of justice. Defense counsel takes no position on this motion. For the following reasons, I will deny the motion.

## I. BACKGROUND

In the evening of October 27, 2014, Eli Heckman was on the sidewalk near 502 North Fourth Street, in Allentown, Pennsylvania, where he heard screaming. He noticed Allentown police officers surrounding an unknown male, assaulting and tazing him. Mr. Heckman began to film the incident with his cell phone, along with several other citizens in the area. He insists that the use of his cell phone did not interfere with or obstruct the action of the police officers. While filming, however, Mr. Heckman was approached by

Allentown Police Officer Jason A. Ammary, who told Mr. Heckman to stop filming the event and to leave the block.  Mr. Heckman responded, "There is no reason why I can't watch (film) this."  After Defendant Ammary gave the command to stop filing, Mr. Heckman allegedly put his phone down by his side, and began to walk away as directed.  Officer Ammary then said, "Get off the block," to which Mr. Heckman responded, "I'm walking, I'm walking.  Mr. Heckman told the officer that he "lived over there," gesturing with his hand and continuing to walk in that direction.

Even though Mr. Heckman was walking away, Defendant Ammary allegedly grabbed and shoved him, in an "extremely rough manner, twisting his arms painfully behind his back, throwing him into a nearby car, taking his cell phone, and handcuffing him while his arms were painfully 'chicken-winged' behind his back.'"  Mr. Heckman was screaming, "Stop! What are you doing?" and "I was walking."  Defendant Ammary called Mr. Heckman an "ass****" and screamed, "give me your f***ing hands."  It was then that Mr. Heckman realized the cell phone had continued to record.  He turned the phone off.

Defendant Ammary allegedly smashed the phone on to the ground in an attempt to destroy the evidence of the officers' conduct with the man on the porch and their treatment of Mr. Heckman.

While transporting Mr. Heckman to the police station, Officer Ammary allegedly said to the plaintiff, "Why did you have to videotape?  Now, you're f***ed."  Defendant Ammary swore out an allegedly false Police Criminal Complaint against Mr. Heckman charging him with Failure of Disorderly Persons to Disperse Upon Official Order, a

violation of Section 5502 of the Pennsylvania Criminal Code, and Disorderly Conduct, a misdemeanor of the third degree under Section 5503(a)(4) of the Code.

Mr. Heckman and his attorney appeared at a preliminary hearing on December 30, 2014 to answer the charges against him. When Officer Ammary failed to appear, all charges against Mr. Heckman were dismissed by the judge.

## II. STANDARD

A judge is presumed to be impartial and thus the party seeking disqualification has a substantial burden and must assert "objective facts" that demonstrate "an appearance of impropriety." United States v. Martorano, 866 F.2d 62, 68 (3d Cir. 1989). Federal law provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "Beliefs or opinions that merit recusal must involve an extrajudicial factor; 'for example, if a judge has acquired a dislike of a litigant because of events occurring outside of the courtroom, a duty to recuse might ensue.'" United States v. Vampire Nation, 451 F.3d 189, 208 (3d Cir. 2006) (quoting United States v. Antar, 53 F.3d 568, 574 (3d Cir. 1995)).

The test for recusal under § 455(a) is an objective one and requires recusal where a "reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington Int'l Ltd., 368 F.3d 289, 296 (3d Cir. 2004). "A party seeking recusal need not show actual bias on the part of the court, only the *possibility* of bias . . . Under § 455(a), if a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality under the applicable standard, then the judge must recuse." Selkridge v. United of Omaha Life Ins.

3

Co., 360 F.3d 155, 167 (3d Cir. 2004) (quoting Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions), 148 F.3d 283, 343 (3d Cir. 1998)).

Moreover, a judge is required to disqualify himself when "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Bias and prejudice "connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree." Liteky v. United States, 510 U.S. 540, 550 (1994).

The United States Court of Appeals for the Third Circuit has made it clear that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278 (3d Cir. 2000). Thus, "the court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings." Conklin v. Warrington Twp., 476 F. Supp. 2d 458, 463 (M.D. Pa. 2007).

## III.  DISCUSSION

There are no grounds for recusal here. No extrajudicial factor exists which could have resulted in my dislike of the plaintiff or his attorney. There is no mention or evidence of anything happening outside the courtroom which would have resulted in any negative feeling against counsel or his family.

In fact, counsel's father faced a statutory maximum sentence of 159 years' imprisonment for his twelve convictions. The Probation Department, however, determined that his adjusted offense level was 30, which together with a criminal history of I yielded an advisory guideline range of 97 to 121 months' imprisonment. I sentenced him to seventy-eight months, well below the advisory guideline range. Further, although counsel's brother was his father's co-defendant, the three counts filed against him were dismissed by the government at the father's sentencing. A reasonable person, with knowledge of these facts, would conclude that my impartiality could not reasonably be questioned. Finally, displeasure with my rulings during the criminal proceedings of counsel's father is an insufficient basis for recusal.

I harbor no personal animus toward plaintiff's counsel, nor toward his family. My sentencing decision in the criminal case involving John Karoly, Jr., plaintiff's counsel's father, was based on the federal sentencing guidelines and the sentencing factors I am required to consider under 18 U.S.C.A. § 3553. My experience with John Karoly, Jr.'s criminal case has left me with no residual bias, prejudice, or any feeling that would in any way affect my judgment or attitude toward Joshua Karoly or anyone he represents.

The law provides that a judge is presumed to be impartial and thus the burden is on the movant to assert objective facts that would demonstrate "an appearance of impropriety." Plaintiff's counsel has asserted no such facts. Accordingly, I will deny the motion to recuse.

An appropriate Order follows.